**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PARKER-HANNIFIN CORP. AND** | ) | **CASE NO.1:07CV238** |
| **PARKER INTANGIBLES LLC** | ) | |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **BALDWIN FILTERS, INC. AND** | ) | **OPINION AND ORDER** |
| **CLARCOR INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Plaintiffs' Parker Hannifin Corp. and Parker

Intangibles, LLC's Complaint alleging Defendants Clarcor, Inc. and Baldwin Filters, Inc., a

division of Clarcor, are selling products-i.e. fuel and oil filters and filter elements that infringe

upon four patents owned by Plaintiffs.  Plaintiffs seek injunctive relief, damages and fees as a

result of Defendants' alleged infringement.

In light of *Markman v. Westview Instruments,* 517 U.S. 370 (1996), the parties have

requested this Court determine the meaning or construction of certain claims as a matter of

law.  The Court held a *Markman* hearing on April 15, 2008.

1

## LAW and ANALYSIS

A patent is presumed valid and the party moving for invalidity has the burden of establishing invalidity by clear and convincing evidence.  See *Atlas Powder Co., v. E.I. duPont de Nemours & Co.,* 750 F.2d 1569, 1573 (Fed. Cir. 1984).   Claim construction (i.e. interpretation of the words in the patent's claim) is a question of law for the Court to determine. See *Markman v. Westview Instruments*, 517 U.S. 370 (1996) ("So it turns out here, for judges, not juries, are the better suited to find the acquired meaning of patent terms");  *In re Schreiber,* 128 F.3d 1473, 1477(Fed. Cir.1997) ("When no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job...") *American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1359 (Fed Cir. 1984).  Courts must first look to intrinsic evidence, (i.e. the claim itself, specifications, prosecution history and prior art cited in the patent) to resolve any ambiguities.  See *Vitronics Corp. v. Conceptronics, Inc.,* 90 F.3d 1576, 1582 (Fed Cir. 1996).  The proper starting point for claim construction is the language of the claim itself.  *Comark Comm., Inc. v. Harris Corp.,* 156 F.3d 1182, 1186 (Fed. Cir. 1998).  If intrinsic evidence is unable to resolve the ambiguities the Court may consider extrinsic evidence (i.e. inventor testimony, expert testimony, dictionaries, treatises and prior art not cited in the patent).   The current trend is Courts may consider the following materials in order of importance to aid in construing claims:

1) The claim itself
2) Specification (the part of the patent which describes the invention, and which concludes with one or more claims
3) Prosecution history
4) Prior Art cited as reference
5) Dictionaries, encyclopedias and treatises

2

6)      Inventor testimony
7)      Expert testimony
8)      Prior art not cited in prosecution history


*Markman* sets no procedural requirements for when claims should be construed.  Courts may construe claims at trial as long as they are construed prior to jury instructions. In *Superguide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 898 (Fed Cir. 2004) Judge Michel stated the following which this Court finds is a good guide for claim construction.


But the cause of my alarm extends far beyond this case. I am also concerned that the court's opinion relies on certain imprecise statements prior panels of this court have occasionally made in recent years concerning the "plain" or "ordinary" meaning of claim terms. Despite the now-common references to the "plain meaning" or "ordinary meaning" of claim terms, or even the "ordinary dictionary meaning" cited in the majority's opinion, our precedent requires that the correct meaning of claim terms is that determined from the standpoint of a person of ordinary skill in the relevant art and at the time of the patent. I am concerned then that the use of these "short-hand" expressions about ordinary meaning obscures the correct analysis, tempting panels to look for an "ordinary meaning" divorced from the proper perspective-the artisan's-and the preferred, proper sources of interpretation-the disclosure, technical dictionaries, prior art patents, and expert testimony. The ultimate result of this trend is claim constructions providing the broadest possible scope to claim terms, absent express limiting language in the claim, specification or prosecution history, but regardless of what the inventors actually invented.

If we fall into such error, we may render ineffective the examination process at the Patent and Trademark Office, for patents will later get broader scope than what the examiner understood, and found new and non-obvious, and hence patentable, at the time.


Courts have available to them a number of "canons of construction" which aid in construing patent claims.  Among them are:

1)      Each claim in a patent has a different scope.  A dependant claim has a narrower
        scope than the claim upon which it depends.
2)      Claims are not limited to the preferred embodiment disclosed in the specification.

3



3) Ordinarily, different words in a patent have different meanings.

4) Ordinarily the same word in a patent has the same meaning.

5) Ordinarily, the meaning should align with the purpose of the patented invention.

6) Ordinarily, general descriptive terms are given their full meaning.

7) If possible, claims should be construed so as to preserve their validity.

8) Ordinarily, absent broadening language, numerical ranges are construed exactly as written.

9) Ordinarily, absent recitation of order, steps of a method are construed to have a particular order.

10) Absent highly persuasive evidentiary support, a construction should literally read on the preferred embodiment.

Patent Law and Practice, Fifth Edition, Herbert F. Schwartz, pg. 134-136.

## **The Subject Technology**

At issue are four patents held by Plaintiffs.  Patent number 7,086,537 ( '537 patent) and 6,983,851 ('851 patent) the oil filter patents and 7,070,692 ('692 patent) and 7,163,623 ('623 patent) the fuel filter patents.

The oil filter patents are directed to a filter element used primarily in diesel engines of Ford F Series Trucks and E Series vans.  The fuel filter patents are directed to filter elements used primarily in the diesel engines of heavy-duty construction vehicles and marine vessels. (Plaintiffs' brief at pg 1).

4

In 1999, Parker conceived of an oil filtration system and was awarded a patent.  Its invention prevents users from closing lids of the filter housing without a filter element and is also low cost and reduces mess and environmental issues.

On January 10, 2006 the 851 patent issued and on August 8, 2006 the 537 patent issued. On July 4, 2006 the 692 patent issued and on January 16, 2007 the 623 patent issued.

**<u>Res Judicata</u>**

As an initial matter, Baldwin contends Parker is estopped from challenging claims construed on the same patents in California.  According to Baldwin, in a patent case, res judicata bars a party from relitigating the same issues in a claims construction already decided by another court so long as the party against whom estoppel is asserted had a full opportunity to litigate the claims.

Parker argues that the claims constructions in the California case were not a final judgment and therefore have no binding effect upon this Court.

The Court should note there is a split in circuits on this issue with some courts holding prior claims constructions bar relitigation *TM Patents, L.P. v. Int'l Business Machines Corp.*, 72 F. Supp.2d 370 (S.D. N.Y. 1999) and *Amgen, Inc., v. F. Hoffman-La Roche Ltd.*, 494 F. Supp.2d

5

54 (D. Mass 2007) while others have found no such bar *Kollmorgen Corp. v. Yaskawa Electric Corp.*, 147 F. Supp.2d 464 (W.D. Va. 2001).  The parties have not provided any case law from the Federal Circuit nor is the Court aware of any such caselaw by the Federal Circuit on this issue, therefore, it appears the Federal Circuit has not ruled on this issue and the holdings of the district courts are not binding upon this Court.  Therefore, the Court will not preclude Parker from arguing the issue though the rulings of the California court in *Parker-Hannifin Corp v. Wix Filtration Products, Inc.* 1:06 CV 00098, (E.D. Cal. 2006) will receive deferential treatment unless clearly erroneous.  With that in mind, the Court will proceed to analyze the differing interpretations of the claims at issue.

**Claim disputes of the '537 Patent**

Below, the figures 6 and 7 represent embodiments of the 537 oil filter.  Figure 7 is the inside surface of the first end cap.  The four raised protrusions are the locking assembly at 116 of Figure 7 which lock at Figure 6 number 110 elements of the housing member. When the

pr



Fig. 7



Fig. 6

ot

6

rusions engage the head of the locking members at 110 it allows the filter housing lid to close.

According to Defendant, 537 describes two designs for the locking protrusions.



**Fig. 7**

At issue is the above diagram wherein the locking protrusion are located on a flat end cap and the protrusions are on a separate annular end piece located against the inner surface of the upper end cap.  According to defendant the second embodiment replaces the protrusions described in figure 7 at 116 with the separate annular end piece shown in figure 12.

**End Cap Assembly**

The parties contest the meaning of the term "end cap assembly" used in claim 1 and 12 of the 537 patent.  Parker proposes the following construction: "collection of components including or comprising an end cap."  Parker contends the intrinsic evidence supports this construction.

7

First, the claims themselves define the components of the end cap assembly:

> Claim 1: ... and end cap assembly at the first end of the filter media including a first annular end cap sealingly bonded to the first end of the filtration media, and a separate annular end piece located in the sealing relation with the first end cap...
> Claim 12:...an end cap assembly at the first end of the filter media including a first flat annular end cap sealingly bonded to the first end of the filtration media...

Parker contends the above claim language clearly encompasses multiple components including the end cap.  Because the claim is the best intrinsic evidence, Parker contends, it should control.  Furthermore, Parker contends the extrinsic evidence supports its construction. Its expert, Professor Charles Garris, a mechanical engineering professor at George Washington University states:

> An assembly is a unit containing the component parts of a mechanism, machine, or similar device.  *See* McGraw-Hill Dictionary of Engineering 2d ed. 2003 p.33 (attached hereto as Exhibit H). It is the final product after putting together a machine or mechanism from its component parts. See Dictionary of Mechanical Engineering 4th ed. 1996 p. 14 (attached hereto as Exhibit I). Therefore, an assembly generally connotes a set of parts that are connected or related in some fashion.

Defendants contend the appropriate construction of "end cap assembly" should be:

> end cap unit formed from two or more component parts that necessarily remain with the filter element when the filter element is removed from the housing.

At the heart of this claim dispute is whether the end cap assembly remains with the filter element upon removal or whether end cap assembly refers to the entire assembly that includes both the removed portion of the filter and the remaining housing.  According to Defendants, the plain claim language supports its position.  The claim language requires the end cap assembly include a "separate annular end piece located in sealing relation with the first end cap."  The annular piece is the portion of the end cap having protrusions.  This piece must remain with the

8

filter element when the filter is removed from the housing.  According to Defendants, the prosecution history of the 537 family of patents demonstrates, "the  elongated protrusions remaining with the filter element when the filter element is removed from between the housing portions."  Therefore, in order for the term "end cap assembly" to have any meaning, according to Defendants, the end cap assembly must include two or more components that remain with the filter element upon its removal from the housing.

The *Wix* Court construed the term as a "collection of components comprising the end piece of at least a combination of a flat annular end cap and a separate annular end piece."

**Court's Construction**

The Court finds that "end cap assembly" is not limited to the two or more components that remain with the filter element since the specification and claim language place no such limitation on the claim.  The claim uses the term "including" which encompasses more than the specified components.  The *Wix* Court determined that the terms "including" and "comprising" are interchangeable. This Court agrees the terms are synonymous.  In light of the fact that the Federal Circuit has held,  "The transitional term 'comprising' ... is inclusive or open-ended and does not exclude additional, unrecited elements or method steps." *Georgia-Pacific Corp. v. United States Gypsum Co.,* 195 F.3d 1322, 1327-28 (Fed.Cir.1999). "A drafter uses the term 'comprising' to mean 'I claim at least what follows and potentially more.' " *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.,* 212 F.3d 1377, 1383-84 (Fed.Cir.2000). *CollegeNet, Inc. v. ApplyYourself, Inc.* 418 F.3d 1225, 1235 (Fed Cir. 2005).  In light of the above caselaw, the Court finds Plaintiffs' interpretation more accurately captures the claim as stated without the limitations suggested by Defendants that are not found in the claim itself.  Therefore, in

9

agreement with the *Wix* Court, the Court interprets "end cap assembly" as "a collection of components including or comprising at least a flat annular end cap and separate annular end piece."

**Flat Annular End Cap**

Parker asks this Court to construe the above term as:

> The component or components that cover the filter element at the end, configured or arranged as a ring, the major surface of which is essentially planar and distinctly greater than the minor surfaces. "Annular" means configured or arranged as a ring.

Defendants argue the Court should use their construction:

"disk shaped end cap with a smooth surface free of projections and indentations."

Plaintiffs contend their construction of the term "flat" is supported by the dictionary definition of the term and is supported by the intrinsic evidence found in the embodiment figures in the patent itself.  In figure 10 seen below, it shows a concave surface where the end cap (114) meets the valve component (144).  Therefore, according to Plaintiffs, any construction that requires the end cap to be perfectly smooth or without planar alteration is contrary to the patent and would exclude embodiments disclosed in the specifications.

10



Fig. 10

Defendants contend the term "flat" should mean without projections or indentations and cite dictionary definitions in support.  In figure 8 as seen below, Defendants contend the embodiment shown clearly supports Defendants' construction as the outer surface of the outer end cap at 114, is a smooth surface free of protrusions. Also, in other claims contained in the 537 patent, Plaintiffs included language indicating when a projection extended from a flat surface.  No such descriptor is found in claim 12.  Therefore, the Court should not permit Plaintiffs' broad interpretation of the plain term "flat".

11



The *Wix* Court held that the term "flat" was easily understood per common usage and construed the term as "flat means flat".  Relying on dictionary definitions and common parlance including the Oxford English Dictionary which defined flat as " Of a surface: Without curvature, indentation, or protuberance; plane, level," and *Merriam-Websters* definition of "flat" as :

> "having a continuous horizontal surface b : being or characterized by a horizontal line or tracing without peaks or depressions; having a relatively smooth or even surface; arranged or laid out so as to be level or even; having the major surfaces essentially parallel and distinctly greater than the minor surfaces."

**The Court's Construction**

The Court sees no reason to depart from the *Wix* Court's interpretation.  Flat as a descriptor carries no loaded meanings.  The Court holds "flat" means "flat" as construed by the *Wix* Court.

12

**Located in Sealing Relation With**

Claim 12 describes "a separate annular end piece ***located in sealing relation with*** the first end cap..."  Plaintiffs offer the construction of the above term as " located tightly or securely against."  Defendants argue the appropriate construction should be "forming a fluid-tight seal against the inside surface of."  Plaintiffs contend the contested term merely describes the closeness of the fit between the annular end piece with another object.  According to Plaintiffs, the specifications clearly discuss the option of permanently affixing the end piece with an adhesive or merely holding the end cap by means of friction or interaction of locking members.  It does not require the members fit be fluid tight as Defendants construe nor does the specification limit the fit to the inside surface.

Defendants contend Plaintiffs' interpretation reads out "sealing".  The sealing out of fluids and preventing the passage of contaminants and debris is a critical feature of the filter.  Also, the specification provides the separate annular end piece fits against the inside surface of the cap.  Therefore, the intrinsic evidence supports Defendants' proposed construction that the placement is limited to the inside surface of the end cap.

**Court's Construction**

The Court holds that the patent specification states specifically "fluid-tight" when it wanted to indicate such a limitation.  Claim 12 places no such limitation and the Court will not read one into the patent.  As Plaintiffs point out, the specification at Col. 10 ln 20-30 describes the sealing relation contemplated.

> The end piece 160 can be permanently fixed to the end cap, such as with an adhesive, or can merely be located against the end cap and held in place by friction fit, or by the interaction with the locking member 76.

13

This description supports Plaintiff's contention that a sealing relation refers to the manner in which the component is joined to another object.

Therefore, the Court holds "located in sealing relation with" to mean "located tightly or securely against."

## Sealingly Bonded

Claim 12 also describes "a first flat annular end cap sealingly bonded to the first end of the filtration media..."  Plaintiffs suggest the following construction, "located tightly or securely against by bonding."  Defendants argue for the following construction "bonded so as to form a fluid tight seal."  The parties argue on the same basis as the previous term;  Plaintiffs against a limitation that it be fluid tight; Defendants for such a limitation.

## Court's Construction

Again, for the foregoing reasons, the Court finds no such fluid tight limitation is placed on the described claim and holds that "sealingly bonded" means "held together tightly or securely by bonding."

## Patent 851 and 537 Claim Constructions

## End Cap

The parties did not originally contest the construction of the term "end cap" in the original briefing but now seek construction of the term as relates to the 851 oil filter patent. Parker proposes end cap should be defined as a  "structure that covers the filter element at the end of the filter."  Baldwin proposes that the term "end cap" be construed as "structure permanently attached to one end of the filtration media."

The parties agree that "structure" can be used instead of component or components as

14

originally proposed by Parker.  The dispute lies in whether the structure is permanently attached or not.  Parker contends such limitation is not found in the claims of the 851 patent, nor does the specification require the end cap be permanently attached.  In fact, Parker argues such a limitation would read out several embodiments.  For example, in the specification at Col. 10, ln. 21-25 it states:

> The end piece 160 can be permanently fixed to the end cap, such as with adhesive, or can be merely located against the end cap and held in place by friction fit, or by interaction with the locking member 76.

Claim 24 of the 851 patent states in pertinent part:

> A filter element including a ring of filtration media circumscribing a central axis and having first and second ends; a first end cap sealingly bonded to the first end of the filtration media, and a second end cap sealingly bonded to the second end of the filtration media...

The Court has already construed "sealingly bonded" to mean "held together tightly or securely by bonding."  Therefore, in light of the specification that demonstrates at least one embodiment that does not require a permanent attachment, the Court will not read a permanency limitation on the claim.  However, the Court does agree with Baldwin that the plain language of both the specification and claims demonstrates that the end cap is sealingly bonded to the filtration media and not the filter element, therefore, the Court construes the term "end cap" as "structure sealingly bonded to an end of the filtration media."

The Court also notes that Defendants did not originally challenge the terms "annular" or end cap in the original Complaint.  While Plaintiffs offered their construction of these terms, Defendants' original brief did not contain an alternative. There is no dispute that the term "annular" means "arranged as a ring" .

Therefore, the Court construes the entire term "flat annular end cap" as a "flat, disk

15

shaped structure sealingly bonded to an end of the filtration media."

**Permanently fixed to**

Again, in Claim 24 of the 851 patent, the parties dispute the term "permanently fixed to" as stated in Claim 24 as follows:

"at least one protrusion permanently fixed to said first end cap..."

According to Plaintiffs, the term needs no construction, while Defendants contend it means "permanently attached and immovable relative to."  The parties do not dispute the term "permanent" but do dispute whether something that is permanently fixed to something else is also necessarily immovable.  Plaintiffs argue that an object - i.e an inner ring and an outer ring may be permanently fixed together yet the inner ring may rotate inside the outer ring. Defendants argue to the contrary, contending that the general definition of fixed means "attached or placed so as to be firm and not readily moveable; stationary; rigid." Citing Expert A. Wahls Ex. 3 and *Merriam Webster's College Dictionary* (1999).

**Court's Construction**

Defendants concede there is no language in the claim or specification stating that the protrusion be immovable.  In the absence of such limiting language in the claim or specification, the Court will not read such limitation onto the claim.  Therefore, the Court agrees with Parker and finds "permanently fixed to" needs no construction.

**Integral**

Claim 24 of the 851 patent and claim 12 of the 537 patent reads:

"said central opening of said first end cap bounded by an annular flange integral with said first end cap."

"Said central opening of said end cap assembly having a smaller diameter than said

16

central opening of said second end cap, and being defined by an annular flange integral with an inner surface of said end cap assembly..."

Parker construes "integral" as "composed of integrated parts."  Baldwin construes "integral" as "formed in a single piece."

Parker argues "integral" is not the same as unitary which is what Baldwin contends. Parker argues the patent language differentiates between integral and unitary, citing 851 claim 19 which states, "... an annular flange integral with said first end cap...wherein said at least one protrusion is unitary with the first end cap."  This demonstrates, according to Plaintiff, that the terms express different meanings in the patent claims.  In *Applied Med. Res. Corp. V. U.S. Surgical Corp.*  448 F.3d 1324, 1333 n. 3 (Fed. Cir. 2006) the Federal Circuit stated, "the use of two terms in a claims requires that they connote different meanings."  However, the Court stated that such connotation applies when there is no evidence to the contrary.

In *Wix*, the Court construed the term "integral" as "formed in a single piece."  The *Wix* Court acknowledged that the prosecution history shows Parker challenged the idea that "integral" and "unitary" are synonymous during the patent process.  The *Wix* Court determined that the prosecution history was not helpful because it was ambiguous, in that the PTO originally disallowed the claim terms "unitary" and "integral" as they were synonymous.  According to the *Wix* Court, the prosecution history shows Parker withdrew the term "integral" yet the patent issued with the term "integral" in the claim.  Furthermore, the embodiments all show the flange as formed as a single piece with the top end cap.

The Court departs from the holding of the *Wix* Court here.  First, the patent claims use separate terms and the prosecution history demonstrates that Parker consistently argued for their separate meanings.  In patent cases, patent writers are permitted to act as their own

17

lexicographers (giving a claim term the writer's own definition), and the prosecution history

demonstrates Parker intended "integral" to mean something different than "unitary."

Furthermore, an example by Baldwin gives support to Parker.  Citing the 851 specification at

Col 4, lines 12-14, it states, "the flange and protrusions can be easily formed with the end cap

such as by molding the end cap as a unitary component."  This specification's use of the term

"such as by molding the end cap as a unitary component" clearly contemplates some form that is

not formed as a unitary component.  Finally, *Merriam Webster's* defines integral as "formed as a

unit with another part." *Merriam-Webster Online Dictionary,* 2010.

http://www.merriam-webster.com/dictionary/integral.  Therefore, the Court adopts Parker's

definition that "integral" means "composed of integrated parts."

**<u>Short distance</u>**

Claim 24 of patent 851 states:

"said at least one protrusion permanently fixed to said first end cap and projecting axially
inward from said first end cap a short distance toward second end cap."

Parker proposes the construction of short distance as "a small distance relative to the

overall length of the filter element."  Baldwin contends the term is indefinite as the claim lacks a

point of reference and lacks any specification of the length of a short distance.  Furthermore,

Baldwin contends the specifications and prosecution history gives no indicator of the length of

the distance.  Baldwin points to the case of *Halliburton Energy Services, Inc., v. M-I LLC,* 514

F.3d 1244 , 1256 (Fed. Cir. 2008) for the proposition that vague, undefined terms are indefinite.

Parker contends a point of reference is provided in the claim itself in that the protrusion

must be shorter than the full distance between the first and second end caps since the plain

language of the claim states the protrusion "project axially inward from said first end cap a short

distance toward said second end cap."  Also, since the protrusion must engage the head of a

locking member as illustrated in Figures 6 & 7 of the 851 patent, a person of ordinary skill in the

art is informed as to the short distance.

**Court's Construction**

The Court agrees with Parker that the term is not indefinite as it must be smaller than the

distance between the first and second end caps and engage the locking member.  Therefore, the

Court adopts Parker's construction.

## The 692 and 623 Patents

Plaintiffs contend that  in 1998 Parker conceived of a fuel filtration system that prevents

an improper fuel filter element from being used in the fuel filter housing portion of the vehicle

engine, prevents operation of the engine without a filter element in place, is simple and low cost

to manufacture and assemble and prevents air from entering the system. The 692 and 623 patents

are for fuel filters.  The patents specifically describe a fuel filter consisting of a replaceable filter

element that fits within a specific housing.  The housing has a valve structure that stops fuel flow

when no filter or an improper filter is installed.  The lower end cap of the fuel filter element has

a valve actuating portion that opens the valve structure.



Fig. 5                                                      Fig. 6

The valve structure includes a latch device and a valve device.  Figures 5 and 6 show the bottom end cap.  The area marked 100 on both diagrams is the annular base of the end cap and 104 is a cylindrical portion containing several keys marked as 116.  When the filter is installed in the housing the keys engage and unlock the latch device allowing it to slide.  Once the latch is unlocked either the keys or the annular base of the valve actuating portion engage the valve device causing the valve to slide down and uncover the opening in the central standpipe.  This permits the flow of fuel into the filter.

Defendants contend Parker seeks to blur the distinction between the annular end cap portion and the valve actuating portion.  Defendants argue Parker's patents draw a distinction between these two components while Baldwin's do not have these as separate and distinct.

**Annular End Cap Portion**

Plaintiffs contend "end cap portion" deserves its plain and ordinary meaning while the term "annular" means "configured or arranged as either a continuous, or a noncontinuous ring."  Defendants contend the above should be construed as, "annular end cap portion, separate from

the valve-actuating portion."  Plaintiffs contend there is no limiting instruction in the specification warranting Defendants' distinction. The parties do not seek a construction of the entire term rather, Plaintiffs want annular construed while Defendants want the end cap construed to be separate from the valve actuating portion.

Defendants contend the claim language expressly distinguishes the two.  For example, the 692 claim reads, "the second end cap having an annular end cap portion... and wherein the second end cap further has a valve-actuating portion, including a cylindrical portion....connected at one...end to the annular end cap portion."  Defendants argue the term "further" means in addition.  Also, Defendants contend the annular end cap portion is never mentioned as part of the valve actuating portion in the abstract or elsewhere in the patent.  Further, the Background of the Invention states, " the second end cap has an annular end cap portion sealingly bonded to the second end of the filter media ***and*** a valve actuating portion." 692 column 2 lines 50-52.

Plaintiffs contend Defendants' construction does not even apply to all the claims describing an annular end cap since the 692 patent at claim 13 and the 623 patent at claim 19 do not describe a valve actuating portion.  Finally, Plaintiffs contend Defendants' construction reads against at least one embodiment, demonstrating that in claim 10 of the 692 patent the annular end cap as shown in figure six is a single piece with the valve actuating portion.

**The Court's Construction**

The Court holds that the end cap portion is described as separate and distinct from the valve actuating portion in claim 1 of the 692 patent but is not described as such in claim 13 of the 692 patent or claim 19 of the 623 patent, and the Court will not read such a limitation therein. However, the Court notes that Parker has previously argued that component parts may be part of

21

a single unitary piece.  Therefore, to be consistent with the Court's prior construction and Parker's own proposed constructions, the Court defines "annular end cap portion" as "an annular end cap portion separate from a valve actuating portion." However, such limitation is placed only on claim 1 of the 692 patent.  No distinction will be made for claims 13 of the 692 patent or claim 19 of the 623 patent.

**End Cap Assembly and Assemblies**

Plaintiffs argue the following construction for "end cap assembly and assemblies", "collection of components including or comprising an end cap" for the same reasons as argued in the 537 patent-i.e. as supported by the plain language of the claims.

Baldwin contends it should be construed as " unit formed from two or more component parts."  Baldwin contends that in the *Wix* case,  Parker admitted in an action for patents, including the 623, 537 and 692 before this Court, that the term "assembly" means a structure with multiple components.  Baldwin contends Plaintiffs seek to make the term "end cap" synonymous with the term end cap assembly which is illogical and is not supported by the language of the claims.  Parker contends an assembly need not be comprised of a plurality of parts.  Rather, it can be a single part with molded components.

The *Wix* Court, using the same logic as in the 537 patent, construed the term as " a collection of components comprising the end piece of at least a combination of an annular end cap portion, an annular base, a sealing device and plurality of thin flat keys."

According to the claims at issue, the '692 patent claim 13 states in pertinent part:

A filter element having a ring of filter media defining a central cavity and circumscribing a central axis, said ring of filter media having a first end and a second end; first and second end cap assemblies fixed to said first and second ends, respectively, of said filter media, the second end cap assembly including: i) an annular end cap portion defining a

first central opening and having an axially inner surface sealingly bonded to the second end of said filter media; ii) a cylindrical portion projecting axially from the inner surface into the central cavity of the element; iii) an annular base connected to the cylindrical portion and extending radially inward from the cylindrical portion to define a second central opening which can receive a pipe, the second central opening being co-axial with and smaller than the first central opening; iv) a sealing device bounding the second central opening; and v) a plurality of thin, flat keys supported by the second end cap assembly, each key having an axially inner end fixed to and supported by the second end cap assembly....

The '623 patent at claim 19 reads identically in the sections pertinent to this construction.

**Court's Construction**

The Court finds no reason to depart from the *Wix* construction as the claim itself does not require two or more component parts. Therefore, the Court adopts the *Wix* court construction of end cap assembly as " a collection of components comprising the end piece of at least a combination of an annular end cap portion, an annular base, a sealing device and plurality of thin flat keys."

Also, the Court construes "end cap assemblies" as the "plural of end cap assembly."

**Annular Base**

Plaintiffs' construction of  "annular base" states, "the component or components, configured or arranged as a ring, that are located near the end of a structure or that act to support something."  Annular means configured or arranged as a ring."  Defendants' construction reads, "disk shaped base that is part of the valve actuating portion."

Plaintiff contends the term annular does not necessarily mean continuous.  It is unclear what the battle is about.  Defendants merely argue that nowhere in the 623 or 692 patent is there a definition of annular that coincides with what Plaintiff proposes and its proposed construction is vague and offers no guidance to a jury.

Annular means, "of, relating to, or forming a ring." *Merriam-Webster Online Dictionary*. 2010, http://www.merriam-webster.com/dictionary/annular. The *Oxford English Dictionary* defines annular as "of or pertaining to a ring." *Oxford English Dictionary Online Second Edition* 1989. While Parker's *Markman* brief asked the Court for a construction that would include the term "continuous or non continuous," Parker, at oral argument, dropped such a request, therefore, the Court will not consider the additional defining term.

Base is defined as "the bottom of something considered as its support." *Merriam Webster Online Dictionary*.2010, http://www.merriam-webster.com/dictionary/base.

**Court's Construction**

The Court construes the term "annular base" to mean "ring shaped base" as the term base is not in dispute. Furthermore, the Court agrees with Parker that reading into the claim the requirement that it be attached to the valve actuating portion improperly limits the term since certain claims do not describe attachment to a valve actuating portion.

**Valve Actuating Portion**

The parties dispute the construction of the above term as it relates to claims 1 and 7 of the 692 patent. Plaintiffs propose the following construction: "a region of the filter element whereby engagement of a valve mechanism can take place." Defendants propose the term be construed as "valve actuating portion, separate from an annular end cap portion, that engages a valve structure when the filter element is installed in a housing."

Plaintiffs contend that reading a functional requirement on the claim places a forbidden means vs. function limitation on a claim where none exists. Furthermore, the claims at issue do not require the valve actuating portion be a separate part from the annular end cap portion.

24

Baldwin argues the valve-actuating portion is a discrete region that must be read separately from the annular end cap portion.  It is a discrete region of the second end cap as defined in the claim.  It is delineated from the annular end cap because the description requires some part of the valve actuating portion, and not the annular end cap, to engage the valve structure when the filter element is installed in the housing.

According to Defendants, the below diagram shows "the '692 and '623 patent figures also confirm that the keys of the "valve-actuating portion" of the lower end cap engage the latch device and/or the valve device of the valve structure when the filter element is installed in a housing. "The figure above shows the filter housing *without* a filter element installed (left side) and the filter housing *with* the filter element installed (right side). The right side of the figure shows that the keys (118 and 119) (shown in light blue) of the valve-actuating portion engage the latch device (68) (shown in green) and/or valve device (64) (shown in red). The figure also shows that the annular end cap portion (shown in pink)..." (ECF #40 pg. 14)

25



Fig. 4

**Wix Court Construction**

The *Wix* Court construed the "Valve-actuating portion" as "to include the cylindrical portion, the annular base, and the keys, which engage the value (sp) mechanism."

**Court's Construction**

The Court agrees with the *Wix* Court's construction.  As Plaintiff points out, actuate or

actuating means "to put into action or motion; to move." *Am Heritage Dict.* (2d Edition 1985).

*Merriam Webster's* defines it as "to put into mechanical action or motion.  To move to action."

*Merriam Webster Online Dictionary,* 2010, http://www.merriam-webster.com/dictionary/actuate.

Thus, valve actuating, as Defendants stated at oral argument when discussing valve actuating, "if

it doesn't take place, it doesn't work.," requires functionality. Therefore, the Court finds the

"valve actuating portion" is construed as the "portion of the second end cap including a

cylindrical portion, annular base and keys which engage the valve mechanism."

**Sealing device**

At issue is the above term as used in claims 1, 7 and 13 of the 692 patent and claim 19 of

the 623 patent.  Parker suggests the above be given its plain ordinary meaning. Baldwin suggests

the sealing device be specifically identified as a, "flexible lip or o-ring."  Plaintiffs contend the

claim at 32 reads, "the filter element as in claim 20, wherein the sealing device comprises a

flexible lip seal."  This is found in a dependent claim and the law states that where a dependent

claim adds a limitation the presumption is the limitation does not exist in an independent claim.

Defendants argue the claims discuss only two sealing devices; a flexible lip or o-ring and

Plaintiffs should be limited to the sealing devices listed in its claims.  Claims 1, 7 and 13 of

patent 692 and claim 19 of patent 623 do not describe a particular sealing device to be used and

the Court will not place such limitation as suggested by Defendant.  The Court agrees with

Plaintiffs that no construction is needed and does not read on the claims the limitation that it be a

flexible lip or o-ring.

**Key and Keys**

Plaintiffs propose for the above terms the following construction: "an element that

protrudes or projects from the surface of another element and that can engage or actuate another mechanism or element."  "Keys is the plural of key."  Defendants propose the following construction: "projection attached to the second end cap at the cylindrical portion or the annular base or both."  Defendants construe "Keys" as "projections attached to the second end cap at the cylindrical portion or the annular base or both."  Plaintiffs argue the specifications do not limit the keys to any particular size or shape.  Baldwin wants limiting language requiring the keys be connected to the cylindrical portion, annular base or both.  The claims do not place this requirement on the keys according to Plaintiffs.  Plaintiffs cite to claims 1 & 7 of the 692 patent, wherein the keys are fixed to and supported by the second end cap and not the annular base or cylindrical portion or both.  Defendants contend every figure in the patent shows the keys attached to the cylindrical portion or annular base.

**The *Wix* Court**

The *Wix* Court construed keys as "protrusions that unlock or release a latch device and also engage or actuate valve device."

**The Court's Construction**

The parties main dispute in the construction question before the Court is not predominately what the keys do, rather, it regards whether they are required to be attached to the cylindrical portion, annular base or both.  The *Wix* Court did not construe, nor does it appear, the parties sought a limitation regarding the placement of the keys.

In the Abstract, the keys are described as part of the valve-actuating portion, and "spaced around the annular base and projecting radially inward from the cylindrical portion and axially outward from the base." '623 patent, Abstract. The specifications describe the position of the

28

keys in the Detailed Description as

> [a] plurality of keys, as at 116, are provided internally of the valve-actuating portion 102 extending axially outwardly from the second central opening 110 and flat annular base 108 toward the first central opening 101. . . . Each key has one radially outer edge attached directly to the cylindrical portion 104 and another axially inner edge attached directly to the annular base 108, although the keys could be attached to just one of these elements." *Id.* at col. 8, lns. 43-55.

The Summary of the Present Invention and Detailed Description sections of the specification place the keys:

> internally of the cylindrical portion of the lower end cap . . . . [which] includes an annular base dimensioned to fit within the cylindrical portion, and a plurality of thin, flat keys projecting axially away from the annular base." *Id.* at col. 3, ln. 66-col. 4, ln. 3; see also *id.* at col. 8, lns. 43-44 (keys are "provided internally of the valve-actuating portion (102)).

According to Defendants, "Every figure of the '692 and '623 patents that shows the valve-actuating portion and keys illustrates the keys as being attached within the interior of the valve-actuating portion, to either the cylindrical portion, the annular base, or both. *Id.* at Figures 1, 2, 4, 5, 6, 7, 17, and 18.

However, federal case law holds that while the specification may make clear that a claimed invention is narrower than the claim language, *see Alloc, Inc. v. Int'l Trade Comm'n,* 342 F.3d 1361, 1370 (Fed. Cir. 2003), ultimately, because it is the claims of the patent that define the scope of the patent invention, a construing court must be careful not to read into the claims limitations that may appear in the specification. *See Interactive Gift,* 256 F.3d at 1331-32. Keeping these principles in mind, the Court finds that Baldwin's proposed construction of key and keys limiting their placement on the cylindrical portion or annular base is a limitation imported from a specific embodiment that is not so limited in the claims themselves. Therefore,

the Court adopts the *Wix* description without the additional limitation of attachment to the annular base or cylindrical portion sought by Defendant.

**Fixed to**

The parties agree the above term should be construed as "securely fastened to or unitary with."  The Court adopts the parties agreed upon construction.

**Sealingly bonded to**

The parties also contend the term "sealingly bonded" in the 623 and 692 patents on the same grounds as previously stated in the 537 patent.

For the reasons discussed previously, the Court construes "sealingly bonded to" as "located tightly or securely against by bonding."

IT IS SO ORDERED.


   S/Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Date: July 9, 2010